CASE 70—PETITION ORDINARY—MAY 11.

# The Farmers' Bank and Trust Company, of Stanford v. Newland.

### APPEAL FROM LINCOLN CIRCUIT COURT.

1. BANKS—NEGLIGENCE IN FAILING TO MAKE COLLECTION.—In this action against a bank to recover damages on account of defendant's negligent failure to collect a certificate of deposit issued to plaintiff by another bank, and which plaintiff had placed in defendant's hands for collection, the plaintiff alleging that defendant had surrendered the certificate to the payor, the petition was defective in failing to allege any fact showing that the alleged negligence had caused plaintiff to lose his debt, there being no allegation that the defendant could have collected the amount of the certificate at any time after it received it for collection, or that the surrender of the certificate to the payor prevented such collection, or that the payor refused to surrender the certificate.

2. SAME.—When a customer deposits with a bank a note, bill of exchange, certificate of deposit or check, for collection at a point distant from the location of the bank, he does so with the implied understanding that the bank will follow the customary method in making such collection, which necessitates the selection of agents or correspondents at other points to carry out the undertaking, and the bank can only be held responsible for the exercise of due care and diligence in making such selection.

3. SAME.—Although the defendant may have been negligent in sending the certificate by mail directly to the bank which issued it, yet, as it received in payment the check of that bank, plaintiff has not been damaged, provided defendant would have had the right to receive the check through an officer or an agent whom it might have selected for the purpose.

4. SAME—ACCEPTANCE OF CHECK IN PAYMENT.—The defendant had the right to receive in payment of the certificate the check of the

payor, the Pineville Banking Company, upon the Louisville Banking Company, that mode of accepting payment being in accordance with defendant's usage.

5. SAME.—Except by agreement or usage a bank has no right to take anything but money in payment of paper it holds for collection.

6. THE USAGE OF A BANK TO ACCEPT CHECKS IN PAYMENT of claims it holds for collection is binding upon a customer, whether he has knowledge of the usage or not, in the absence of any direction by him as to the mode of payment.

7. RIGHTS OF HOLDER OF CHECK—EFFECT OF ASSIGNMENT FOR CREDITORS.—A check drawn upon a bank is an absolute appropriation by the drawer of so much money in the hands of the banker to the holder of the check, to remain there until called for, and can not after notice be withdrawn by the drawer. Therefore, where the drawer, after drawing the check and before it is paid makes an assignment for the benefit of his creditors, the assignment passes to the assignee no interest in that part of the deposit thus appropriated, and the holder of the check may maintain an action upon it against the bank upon which it is drawn.

In this case the defendant having accepted in payment of plaintiff's claim, a check upon the Louisville Banking Company, which is solvent, and that company having refused payment for no other reason than that the Pineville Banking Company had, since the check was drawn, made an assignment for the benefit of his creditors, plaintiff has not been damaged, as he has a right of action against the Louisville Banking Company upon the check.

J. W. ALCORN FOR APPELLANT.

1. Even admitting that the answer of the appellant presented no defense, the petition of appellee would entitle him only to nominal damages, there being no averment that the certificate of deposit could have been collected at any time after the appellant received it for collection, nor that by reason of the surrender of the certificate or the failure to collect it the appellee has lost the amount thereof or any part of it.  (Story on Agency, secs. 222, 236.)

2. The appellant bank in undertaking the collection of the certificate of deposit for the appellee became his agent and was only bound for the exercise of reasonable care and diligence in the discharge of its assumed duties.  (National Bank of Commerce v. Merchants' National Bank, 91 U. S., 92.)

3. As the certificate was payable at and by a bank at a distant place, it necessarily follows that it was a part of the undertaking that the appellant should transmit the certificate to some corres-

pondent for collection, that being the common custom and usage of banks in such cases. (Byrne v. Swing, 6 B. M., 199; De Lazardi v. Hewitt, 7 B. M., 697.)

4. "The liability of a collecting bank extends merely to the selection of a suitable and competent agent at the place of payment, and the transmission of the paper to such agent with proper instructions, and when that is done the correspondent is the agent of the owner of the paper, and the transmitting bank is not liable for the defaults of the correspondent when selected with due care." (Morse on Banks, 2d Edition, p. 414; Fabens v. Bank, 23 Pick., 230; Dorchester, &c. Bank v. N. E. Bank, 1 Cush, 177; E. Hadden Bank v. Scoville, 12 Conn., 203; Mechanics v. Earp, 4 Rawle, 384; Aetna Ins. Co. v. Alton Bank, 24 Ill., 243; Baldwin v. Bank, 1 La. An., 13; Daly v. Bank, 56 Mo., 91.)

5. Though the court should be of the opinion that the correspondent bank is not the agent of the owner of the paper, but is the sole agent of the transmitting bank, still the transmitting bank is not liable for the negligence or mistake of the sole agent, but only for its own fraud or negligence in the appointment, and in this case the appellant should not be held liable, there being no allegation in the pleadings of fraud in the selection of the correspondent. (Darling v. Stanwood, 14 Allen, 504; Taber v. Perolt, 2 Gall., 565; Kent v. Dawson Bank, 13 Blatch., 237.)

6. A check given by a bank immediately before making an assignment is an absolute appropriation of so much money in the hands of the bank holding the deposit to the holder of the check, and the assignee took only so much of the deposit as was left unappropriated after deducting the amount of the check. (Lester v. Given, &c., 8 Bush, 237; Armstrong v. Bank, 90 Ky., 431.)

W. G. WELCH FOR APPELLEE.

1. Where a bank receives the check of the party who is bound to pay the paper, placed in the hands of the bank for collection, and thereupon surrenders the paper to him, it assumes the responsibility for the check proving good; and if it is not paid, the bank is obliged to pay the amount to the person from whom it received the paper. (Morse on Banking, 2d Edition, 428, 429; Daniel on Neg. Inst., 3d Edition, vol. 2, sec. 1625.)

2. Where a collecting bank appoints sub-agents for the collection of the paper placed in its hands, it employs them as its own agents and is responsible for their acts. (Daniel on Neg. Inst., vol. 1, sec. 342.)

3. It is not sufficient that a custom exists, but it must also be reasonable, legal and prudent.

The custom relied upon by the appellant possesses none of these

necessary qualifications and no bank which, for its own con-
venience, observes it should be exonerated thereby. (Morse on
Banking, pp. 415, 435, 439.)

4. A bank receiving a certificate of deposit for collection on another
bank does not use ordinary business prudence and care in send-
ing it direct to the bank making payment; and the transmitting
bank should be held liable for any loss arising by reason of the
selection of such agent (German National Bank v. Burns, 12
Colorado, 539; Morse on Banking, 415, 429.)

5. The acceptance by appellant of the check of the collecting bank
without objection and crediting appellee by the amount of same
was a ratification of the transaction of said bank, and the appell-
ant should be held liable for the payment of same. (Morse on
Banking, 426; 2 Daniel on Neg. Inst., sec. 1625, 3d Edition.)

6. The getting the money for the certificate was not only the "ma-
terial portion" of the appellant's undertaking but the whole of it,
and, upon the failure to collect the money on the check accepted,
it should be held liable for the amount of same. (Daniel on Neg.
Inst., sec. 335; Morse on Banking, 446.)

7. The averments of the answer cure the defects in the petition.
(Slack v. Lyon, 9 Pick., 62.)

JUDGE PAYNTER DELIVERED THE OPINION OF THE COURT.

By this action appellee sought to recover of appellant
bank, damages for its alleged failure to collect a certain
certificate of deposit which had been issued to him by the
Pineville Banking Co. for the sum of five hundred dollars,
and which he had delivered to the appellant bank for collec-
tion before the maturity of the certificate, which certificate
matured on the 18th day of July, 1893. It is alleged in the
petition that the appellant did not present the certificate of
deposit until July 24th, 1893, "and that defendant on said
day surrendered said certificate to the payor thereof, the
said Pineville Banking Company, and negligently failed then
and since to collect from said company the amount as afore-
said, of the certificate or any part thereof, and thereby plain-
tiff says he was damaged in the amount of five hundred
dollars."

There is no allegation that the bank could have collected

the amount of the certificate at any time after it received it for collection, or that the surrender of the certificate prevented such collection, or that the Pineville Banking Co. thereafter refused to surrender the certificate, nor are there any facts alleged which show the alleged negligence has caused him to lose his debt against the Pineville Banking Company.

For these reasons the petition was defective. However, as the judgment must be reversed, we will briefly consider other questions raised by the answer, to which a demurrer was sustained.

It is alleged in the answer that the certificate of deposit was given to it for collection in its usual course of business as a banker; that the certificate was received July 22, 1893, and that on the day it was received it was enclosed in a letter addressed to J. M. Pursifull, cashier of the Pineville Banking Company, which was duly stamped and mailed to him at Pineville, Ky., and in which he was requested to collect and remit proceeds to it; that the letter was received by him on the 23d of July, 1893, after banking hours, and on the next business day he presented the certificate at the office of the Pineville Banking Company for payment, when he received therefor the check of the Pineville Banking Company on the Louisville Banking Company, payable to the order of the appellant, for the amount of the certificate of deposit, and on receipt of which he surrendered the certificate of deposit to the Pineville Banking Company.

On the 28th of July, 1893, Pursifull enclosed the bank's check to the appellant, and it, in due course of mail, sent the check to appellant's correspondent at Louisville, Ky., for presentment and payment, which was accordingly done without delay, and the payment refused because the Pineville Banking Company had made an assignment for the

benefit of its creditors, this assignment being made between the time the check was sent to appellant and the time when it was presented for payment.

It is alleged that the Pineville Banking Company had much more money to its credit in the Louisville Banking Company, subject to check, than the amount called for by the check, and that the Louisville Banking Company is solvent.

It is further alleged that for many years it had been the general custom of banks in Kentucky that when a bank received from a customer for collection, a check or other claim on a bank in good standing, in a distant part of the State, and which was the correspondent of the transmitting bank, to send such check or claim directly to that bank, either with request for payment and credit of proceeds to the transmitting bank, or with request to remit proceeds, and if the request was to remit proceeds the correspondent bank would remit by its check on some bank in Louisville, or other commercial center, with which it had sufficient funds on deposit to pay the check; that the Pineville Banking Company was at the time the certificate of deposit was sent to its cashier and has always been in good financial repute; that the Pineville Banking Company was its correspondent at Pineville. It is contended by appellant that having received the certificate for collection it had the right to follow the custom of banks in making such collections, and send it directly to its correspondent with request that proceeds be remitted, notwithstanding the correspondent was the payor of the certificate, and further, that it had the right to receive in payment of the certificate, the check on the Louisville Banking Company.

In this country there is a great conflict in the opinions of the courts of several States on the question of the extent of

the duty and responsibility of banks who receive a collection on a place distant from its place of business, and as to how far it is liable for the acts of its correspondents or sub-agents in the performance of their duties.

Some courts hold the transmitting bank is liable for any negligence or default of the agent or correspondent which it selects to make the collection. Other courts hold that the bank receiving a claim for collection in a place distant from the place where the bank is engaged in business can only be required to exercise due care and diligence in selecting a competent and trustworthy agent or correspondent, and if it exercises such care and diligence in making such selection, the bank is exonerated from all liability. We do not deem it necessary to analyze and discuss the various and conflicting decisions upon this question.

When a customer deposits with a bank a note, bill of exchange, certificate of deposit, check, etc., for collection at a point distant from the location of the bank, he must know the bank can not send one of its officers or agents to such point to make the collection. He is presumed to know the method employed by banks in making such collections. He knows that the bank must select some other bank or agency to aid in accomplishing the undertaking imposed on it. He has made the bank his agent for that purpose. He has employed the bank to do, through its methods of making collection, that which would cost him much time and money to do himself. When he so engages the bank and makes it his agent to make the collection, he does so with the implied understanding that the bank will follow the customary method in making such collections, which necessitates the selection of agents or correspondents at other points to carry out the undertaking, and the bank can only be held respon-

sible for the exercise of due care and diligence in making such selection.

If the appellant, in the course of its agency, had the right to present the certificate of deposit through one of its officers or through some agent at Pineville, and receive in payment thereof the check of the Pineville Banking Company on the Louisville Banking Company, then having presented the certificate of deposit and demanded payment by letter, thus obtaining the check in payment, it certainly would leave the parties in the same status in either state of case, because it might be admitted for the purpose of argument that the sending of the certificate of deposit to the Pineville Banking Company would be the selection of an agent to make the collection without due care and proper diligence; yet it having made payment of the certificate by check, which the appellant, through an officer or an agent, which it may have selected for the purpose, might have properly received in payment thereof, then it must necessarily follow that the appellee was not damaged because the certificate was presented and payment demanded by letter, and the check in payment was transmitted by mail.

In reaching this conclusion we must then determine whether the transmitting bank can receive a check of another bank in payment of a claim which it has assumed to collect at a point distant from the location of the bank.

If this can not be done, then the only course left for a bank to pursue is to send an agent to the point where the collection is to be made, or to have the bank or agent at that point send by express, or other means of transportation, the proceeds of the collection—the money. This is not regarded so safe by the most prudent business men as to transfer money through the medium of checks and drafts.

It is a cumbersome, and would be a most unsatisfactory,

way to transact business. It is pleaded that it is the usage that banks remit collections so made by checks on a bank in Louisville or other commercial center, when the bank has on deposit money to pay such check.

In 1 Morse on Banks and Banking, Sec. 247, this language is used, to-wit: "Except by agreement or usage a bank has no right to take anything but money in payment of paper it holds for collection."

Sec. 221 reads as follows: "Knowledge of the usage, either expressed or implied, must, it has been said, be brought home to the parties who are to be bound by it. But other cases of high authority declare that the usage of the bank in collections will bind the persons dealing with it in this business, whether such usage be known to them or not; and this is certainly the correct rule. Indeed, the opposing cases can be easily reconciled by the link which appears to be suggested in one of them. The fact that one deals with the bank without taking the trouble to inquire as to its system will raise the implication that he already knows and is satisfied with that system. It is clear that if a person hand over a note to a bank for collection without any species of remark as to the course to be pursued, the bank is not bound to thrust upon him a statement of its intended course, and to retain him until the whole theory has been explained to him, when his conduct unmistakably shows that either he already knows it, or else he does not desire to know it. Either he knows and approves it, or he voluntarily trusts to the wisdom of the bank at his own deliberately assumed risk of its efficiency.

"In such a case the bank not only has the right to assume, but it is even positively bound to assume, that his desire is, that the ordinary and established usage be pursued. An unordered deviation from that usage, though the usage

was unknown to him, would lay the bank open to his suit for damages, and the court must, as has been already shown, rule for him, as matter of law, that the pursuance of the custom was an implied item of the contract.

"It is clear, then, that he could not plead ignorance of it, in order to lay a foundation for a suit against the bank for acting according to it. The knowledge on his part would be implied conclusively."

We conclude that the appellant had the right to receive the check of the Pineville Banking Company on the Louisville Banking Company, in payment of the certificate of deposit, which it held for collection, it being alleged, as heretofore stated, that the Pineville Banking Company had more money on deposit with the Louisville Banking Company subject to check than was necessary to pay the check. Under the decisions of this court in the cases of Lester & Co. v. Given, Jones & Co., 8 Bush, 357, and Buckner, Trustee, &c., v. Sayre, 18 B. M., 745, a check thus drawn is an absolute appropriation of so much money in the hands of the banker to the holder of the check, to remain there until called for and can not, after notice, be withdrawn by the drawer.

Notice was given the Louisville Banking Company of the check, and this institution is solvent. The appellant tendered the check to the appellee, and being the real owner thereof could have maintained an action thereon against the Louisville Banking Company, as it had no right to withhold it.

The Pineville Banking Company by the check disposed of so much of its deposit with the Louisville Banking Company as was necessary to pay it, and it had no right and could not vest its trustee with any interest in that part of the deposit.

In other words, the assignee acquired no greater interest in the deposit than his assignor had.

If the allegations of the answer as amended be true, then the appellee has sustained no damages for which he has any right of recovery against appellant.

It is said by Mr. Story in his work on Agency, sec. 236: "It is . . . a good excuse that the misconduct of the agent has been followed by no loss or damage whatsoever to the principal; for then the rule applies, that although it is wrong, yet it is without any damage; and to maintain an action both must concur; for *damnum absque injuria* and *injuria absque damno* are, in general, equally objections to any recovery."

The judgment is reversed, with directions that the demurrer to the answer, as amended, be overruled, and for proceedings consistent with this opinion.